Joseph L. Richardson (SBN 212206)
jlr@mccunewright.com
Jordan I. Wispell, SBN 333635
jiw@mccunewright.com
MCCUNE LAW GROUP, APC
3281 East Guasti Road, Suite 100
Ontario, CA 91761
Telephone: 909-557-1250
Facsimile: 909-557-1275

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMIL ANGLIN<br><br>          Plaintiff,<br><br>   v.<br><br>COUNTY OF RIVERSIDE; RIVERSIDE COUNTY SHERIFF'S DEPARTMENT; SHERIFF CHAD BIANCO, in his individual and official capacities; EDWARD DELGADO; JAMES KRACHMER; DAVID HOLM; and DOES 1 through 10, inclusive,<br><br>          Defendants. | Case No.:<br><br>**COMPLAINT FOR DAMAGES**<br>1. Failure to Protect from Harm, Fourteenth Amendment Violation (42 U.S.C. § 1983);<br>2. Public Entity Liability for Failure to Perform Mandatory Duty;<br>3. Policies, Customs, Practices Causing Constitutional Violations (*Monell*, 42 U.S.C. § 1983);<br>4. Supervisory Liability Causing Constitutional Violations (Failure to Properly Train, Supervise and Discipline, 42 U.S.C. § 1983);<br>5. Negligence;<br>6. Violation of California Civil Code § 52.1 (Tom Bane Act);<br>7. Declaratory Relief (28 U.S.C. § 2201)<br>**DEMAND FOR JURY TRIAL** |

COMES NOW, Plaintiff, JAMIL ANGLIN, ("Plaintiff") individually, and for causes of action against the defendants and each of them allege as follows:

## I.    INTRODUCTION

1.    This case is about the continuous unconstitutional abuse of Plaintiff Jamil Anglin.  Specifically, he is in a never-ending battle that has him suffering retaliatory abuse asking for humane treatment in the Riverside County Jail system, and standing up for his rights when they were not granted.  As further described below, the treatment Plaintiff continues to suffer from is part and parcel of being in the Riverside County jail system ,which is notorious for unconstitutional treatment of its inmates, to the point of severe physical, emotional and psychological injury, if not death. At this point, Plaintiff's hope is that he will not suffer the ultimate fate that so many have in this system— becoming a Plaintiff.  But, for the time being, his suffering is not to be minimized because it has not resulted in the ultimate price of (wrongful) death.

2.    Plaintiff is informed and believes and thereon alleges that each of the individually named defendants from the County of Riverside and the Riverside County Sheriff's Department knew (and themselves exhibited) reckless indifference to the safety and protection of inmates in the government's custody within the Riverside County correctional facilities, including the Robert Presley Detention Center, Larry D. Smith Correctional Facility,  the Southwest Detention Center, the John J. Benoit Detention Center, and the detention section of the Moreno Valley Hospital.

3.    Despite a long history of complete disregard to inmate safety and protection, as demonstrated through by, among other things, the federal class action *Quinton Gray, et al. v. County of Riverside*, case number 13-0444 VAP(OPx) (C.D. Cal.) (hereinafter the "*Gray* Class Action") targeting the Riverside County Sheriff's Department custody and medical staff's deliberate indifference to the safety and protection of inmates each of the individually named defendants in this lawsuit deliberately failed to segregate the inmates pursuant to Penal Code sections 4001 and 4002, failed to classify persons in custody as required, failed to adequately assess the mental health of inmates, failed to intervene after being alerted of an assault, unlocked a cell door without adequate personnel in the area,

and failed to take even modest actions to prevent in-custody deaths at the Riverside County correctional facilities. Thus, by the time Plaintiff was incarcerated to Riverside County jails, There was an endemic, ongoing and unabated risk of injury to inmates, resulting in Plaintiff's past and continuing injuries.

## II.    JURISDICTION AND VENUE

4.    This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth and Fourteenth Amendments to the United States Constitution, and the laws and Constitution of the State of California. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343.

5.    This Court has the authority to grant the requested declaratory relief pursuant to 28 U.S.C. §§ 2201, as well as Federal Rules of Civil Procedure 57, including pursuant to the Court's inherent equitable powers.

6.    Venue is proper pursuant to 28 U.S.C. §1391(b)(1) and (2) because the Defendants reside within the district and the events and omissions giving rise to Plaintiffs' claims occurred in this judicial district.

## III.    GOVERNMENT CLAIM

7.    On or about June 30, 2023, Plaintiff timely served a Notice of Claim on the County of Riverside pursuant to Gov. Code § 911.2 et seq., and the County of Riverside rejected the claim on August 14, 2023, by operation of law.

8.    Plaintiffs have complied with the California Tort Claims Act requirements with respect to their claims arising under state law.

9.    With respect to the supplemental state claims, Plaintiffs request that this Court exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over such claims as they arise from the same facts and circumstances which underlie the federal claims.

**PARTIES**

10.    Plaintiff Jamil Anglin is a 46 year old male, and was, is and at all times relevant to this case, has been, a pretrial detainee residing in the County of Riverside, California.

11.    Defendant COUNTY OF RIVERSIDE (hereinafter also "COUNTY") owns, operates, manages, directs and controls Defendant RIVERSIDE COUNTY SHERIFF'S DEPARTMENT (hereinafter also "RCSD"), also a separate public entity, which employs other Doe Defendants in this action. At all times relevant to the facts alleged herein, Defendant COUNTY was responsible for assuring that the actions, omissions, policies, procedures, practices and customs of its employees, including RCSD employees and the Correctional Health Services (hereinafter also "CHS") employees, complied with the laws and the Constitutions of the United States and of the State of California. Defendant COUNTY, through RCSD and CHS, is and was responsible for ensuring the protection and safety of all persons incarcerated at the RCSD correctional facilities, including the Robert Presley Detention Center (hereinafter "RBDC"), Larry D. Smith Correctional Facility (hereinafter "LSCF" or "Banning"), John J. Benoit Detention Center (hereinafter "JBDC"), and the Blythe Jail (hereinafter collectively "COUNTY Jails").

12.    Defendant CHAD BIANCO ("SHERIFF BIANCO"), at all times mentioned herein, is and, since November 6, 2018, has been the Sheriff, Coroner, and Public Administrator of Defendant COUNTY OF RIVERSIDE, the highest position in the COUNTY Jails. As Sheriff, Defendant BIANCO is and was responsible for the hiring, screening, training, retention, supervision, discipline, counseling, and control of all COUNTY Jails' employees and/or agents. Defendant SHERIFF BIANCO is and was charged by law with oversight and administration of the COUNTY Jails, including ensuring the safety of the inmates housed therein. Defendant SHERIFF BIANCO has also been responsible for the promulgation of the policies and procedures and allowance of the practices/customs pursuant to which the acts of the COUNTY Jails alleged herein

were committed. Defendant SHERIFF BIANCO is being sued in his individual and official capacities.

13.    Defendant EDWARD DELGADO ("DELGADO"), at all times mentioned herein, was employed by Defendant COUNTY as the Corrections Assistant Chief of the COUNTY Jails, including the CBDC, for the COUNTY, and he was acting within the course and scope of that employment. In that capacity, Defendant DELGADO was a policy making official for the COUNTY OF RIVERSIDE. During the relevant time period, Defendant DELGADO was responsible for the general management and control of the COUNTY Corrections Operations, with primary authority and responsibility for the operations, staff assignments, program development, personnel supervision and training, maintenance and auxiliary inmate services at the jail, subordinate only to the Sheriff and/or Undersheriff. Defendant DELGADO is being sued in his individual capacity.

14.    Defendant JAMES KRACHMER ("KRACHMER"), at all times mentioned herein, was employed by Defendant COUNTY as the Corrections Chief Deputy of the COUNTY Jails, including the CBDC, for the COUNTY, and he was acting within the course and scope of that employment. In that capacity, Defendant KRACHMER was a policy making official for the COUNTY OF RIVERSIDE. During the relevant time period, Defendant KRACHMER was responsible for the general management and control of the COUNTY Corrections Operations, with primary authority and responsibility for the operations, staff assignments, program development, personnel supervision and training, maintenance and auxiliary inmate services at the jail, subordinate to the Corrections Assistant Chief, Defendant EDWARD DELGADO. Defendant KRACHMER is being sued in his individual capacity.

15.    Defendant DAVID HOLM (hereinafter also "HOLM") is and was at all times relevant herein the Corrections Captain at CBDC, one of the highest-level supervisory positions. During the relevant time period, Defendant HOLM was the

Corrections Captain at CBDC, and was primarily responsible for assisting the Sheriff-Coroner with oversight and administration of the CBDC, including ensuring the safety of the inmates housed therein. As Corrections Captain, Defendant HOLM was responsible for supervision of RCSD and CHC employees and/or agents at the CBDC, and for the promulgation of the policies and procedures and allowance of the practices/customs pursuant to which the acts of the RCSD and CHC's employees alleged herein were committed. Defendant HOLM also directly supervised Defendant DOES 9 and 10. Defendant HOLM is being sued in his individual capacity.

16.    Defendants COUNTY OF RIVERSIDE, RIVERSIDE COUNTY SHERIFF'S DEPARTMENT, SHERIFF BIANCO, DELGADO, KRACHMER and HOLM will hereinafter be referred to as the COUNTY DEFENDANTS.

17.    Plaintiffs are ignorant of the true names and capacities of Defendants DOES 1 through 10 ("DOE Defendants") and therefore sue these Defendants by such fictitious names. Plaintiffs are informed and believe and thereon allege that each Defendant so named is responsible in some manner for the injuries and damages sustained by Plaintiffs as set forth herein. Plaintiffs will amend their complaint to state the names and capacities of each DOE Defendant when they have been ascertained.

18.    The identities, capacities, and/or nature of involvement of the defendants sued as DOES 1 through 10 are presently unknown to the Plaintiffs who therefore sue these defendants by fictitious names. Plaintiffs are informed, believe, and thereupon allege that DOES 1 through 10 include individual law enforcement personnel and medical personnel employed by the RCSD and the COUNTY Correctional Health Services, and that they were involved in some manner and are legally responsible for the wrongful acts and conduct alleged herein. Plaintiffs will amend this complaint to substitute the DOE Defendants' true names and capacities when they have been ascertained. Plaintiffs are informed, believe, and thereupon allege that each DOE defendant is a resident of California. On information and belief, DOES 1 through 10 were

and still are residents of the County of Riverside, California. DOES 1 through 10 are sued in both their individual and official capacities.

19.     At all relevant times, DOES 7 and 8 were managerial, supervisorial, training, and/or policymaking employees of Defendant COUNTY Correctional Health Services. At the time of the incident, DOES 7 and 8 were acting under color of law within the course and scope of their duties as employees for the COUNTY Correctional Health Services. They had supervisorial authority over DOES 1-25, and the COUNTY Correctional Health Services employees at the COUNTY Jails. DOES 7 and 8 were acting with the complete authority and ratification of their principal, Defendant COUNTY.

20.     At all relevant times, DOES 9 and 10 were managerial, supervisorial, training, and/or policymaking employees of Defendant COUNTY. At the time of the incident, DOES 9 and 10 were acting under color of law within the course and scope of their duties as employees for the RCSD and/or the COUNTY. They had supervisorial authority over DOES 1-25, and the employees of the RCSD. DOES 9 and 10 were acting with the complete authority and ratification of their principal, Defendant COUNTY.

21.     Each of the defendants, including the DOE defendants, caused, and is responsible for, the unlawful conduct and resulting injuries suffered by Plaintiffs by, among other things, personally participating in the unlawful conduct, acting jointly, or conspiring with others who did so; by ordering, authorizing, acquiescing in, or setting in motion policies, plans, or actions that led to the unlawful conduct, by failing to take action to prevent the unlawful conduct; by failing and refusing to initiate and maintain adequate training and supervision; by failing to enact policies to address the constitutional rights of persons despite the obvious need for such a policy; and by ratifying the unlawful conduct that occurred by agents and officers under their direction and control, including failing to take remedial or disciplinary action.

22.     Plaintiffs are informed and believe and thereon allege that each of the Defendants was at all material times an agent, servant, employee, partner, joint venturer, co-conspirator, and/or alter ego of the remaining Defendants, and in doing the things herein alleged, was acting within the course and scope of that relationship. Plaintiffs are further informed and believe and thereon allege that each of the Defendants herein gave consent, aid, and assistance to each of the remaining Defendants, and ratified and/or authorized the acts or omissions of each Defendant as alleged herein, except as may be hereinafter specifically alleged. At all material times, each Defendant was jointly engaged in tortious activity and an integral participant in the conduct described herein, resulting in the deprivation of Plaintiff's constitutional rights and other harm.

23.     Plaintiffs are informed, believe, and thereupon allege that, at all times relevant hereto, Defendants, and each of them, acted as the agents, servants, and employees of each of the other defendants.

24.     In doing each of the acts and/or omissions alleged herein, Defendants, and each of them, acted within the course and scope of their employment.

25.     In doing each of the acts and/or omissions alleged herein, Defendants, and each of them, acted under color of authority and/or under the color of law.

26.     Pursuant to Gov. Code § 815.2, Defendant COUNTY is liable for any injury proximately caused by the acts or omissions of its employees within the scope of their employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative.  Plaintiff heretofore alleges that the wrongful acts by the individual Defendants and DOES 1 through 10, inclusive, caused the injuries to Plaintiffs as set forth in this complaint, in that these acts or omissions would have given rise to a cause of action against them and in favor of Plaintiffs, independent of Gov. Code § 815.2.

27.     Further, pursuant to Gov. Code § 820, Defendant COUNTY, is liable for injuries caused by their acts or omissions to the same extent as a private person. Plaintiffs

further allege that Defendant COUNTY, caused Plaintiffs' injuries, as set forth in the complaint, and are therefore liable for damages arising out of those injuries as authorized by Gov. Code § 820.

## GENERAL ALLEGATIONS

28.    On or about December 10, 2022, Plaintiff was arrested in Palm Springs, California. He was placed in custody with the Riverside County jail system, specifically the Banning Jail.

29.    On January 3, 2023, while at the Banning Jail, Plaintiff was made to stand in the rain for 4 hours because he complained about being put in a cell with feces on the floor from a toilet overflowing with feces.

30.    On January 11, 2023, while at the Banning Jail, Plaintiff went without shoes for several days, and missed a court date on January 11, 2023, because Riverside County Sheriffs did not transport him to court, a Judge Banning (Hon. Russell L. Moore) ordered Riverside Sheriffs to bring him to the court on January 18, 2023.

31.    On January 18, 2023, Plaintiff was beaten while in chains in an Indio Courtroom after the Commissioner left the courtroom. Plaintiff suffered head wounds.

32.    On January 23, 2023, while at the Banning Jail, Plaintiff was assaulted by an inmate.

33.    On January 28, 2023, Plaintiff was taken to JFK Hospital in Indio, CA because he couldn't breathe, which was a symptom he had since the beating on January 18, 2023, and was diagnosed with a collapsed left lung, and concussion, and sent back to jail in Banning.

34.    On February 7, 2023, while at the Banning Jail, Plaintiff requested eye drops for his eyes from the Nurse (for example, Visine, etc.). However, she gave him Cleaning Solution for Contacts. His eyes were burned as a result.

35.    On March 3, 2023, while at the Banning Jail, Plaintiff was cut on his back in an incident involving another inmate. The sheriff that moved him cussed him out while

doing so. Another officer told him, "You're crazy. You can't identify who cut you." They moved Plaintiff to another cellblock where his commissary is lost. They gave him uncooked cut up potatoes that smell bad to eat.

36.    From the time he was incarcerated, Plaintiff has suffered countless assaults by inmates, and officers have been unresponsive to his related requests surrounding his safety, and quite insensitive about the fact that these incidents were occurring at all.

37.    On March 4, 2023, at 10:05am, while at the Banning Jail, Plaintiff still hasn't had medical attention for his eyes. He said to his mother, "I can't see. I can't breathe." Plaintiff called his mother at 8:53pm on March 4, 2023. He said at 6:51pm, a sheriff told him to get some paper from a light screen in the ceiling (which had been there since December 30, 2022). Plaintiff could not reach it. The Sheriff told him to hop on a rickety table or he (Sheriff) was going to "put Plaintiff in chains and put him outside in the cold for hours." It had snowed.

38.    On March 5, 2023 at 7:05am, While at the Banning Jail, Plaintiff told his mother that he cannot see without his contact lenses. He added that he was being threatened with torture from the Sheriffs. And, there are threats against his family.

39.    Throughout his incarnation, Plaintiff has relayed concerns to his mother than he was being tortured by officers, that officers were setting up inmates to fight one another for sport, and that he felt threatened by the officers.  He informed his mother that "It's dangerous for me. Dispute anything that says I'm incompetent. I am getting tortured. If I don't call you in the morning --PROOF OF LIFE ME."

40.    In the middle of the night, between March 8 and 9, 2023, at the Banning Jail, a Sheriff  came to Plaintiff's cell and told him, "You're not going to make it out of here."

41.    Deputies have disrupted and  caused sleep deprivation more and more, and creating environmental conditions to create or mimic sickness. On March 11, 2023, at Banning Jail, a Deputy woke Plaintiff at 1:00am and told him he had to go to the Nurse's Station, he said, "they want you to talk to a Psych Doctor."  But, nothing happened -- he

was not seen. He went back to sleep, woke up at 2:00 am, then again at 3:00am in a cold sweat. Both he and his cellmate remarked how hot the cell was. Then, they put him in a cold dayroom and wouldn't let him go back.  One sheriff was calling him "Penguin" then said "call your Civil Attorney."  He was not seen by anyone at the Nurse's Station. Plaintiff was tired, sleepy and dizzy.  On March 13, 2023, a Deputy Sheriff woke Plaintiff up early again at 1:00 am, and told him they needed to take him to Court. They put him in a cold room. He did not have a hearing on March 13, 2023.

42.    Plaintiff is informed and believes and thereon alleges that  states Sheriffs are purposefully putting him with inmates that they know will attack him. They made a request that he move after he ordered  commissary. The order gets lost and the money has gotten lost, too.

43.    On Sunday, April, 9, 2023, the Sheriffs started moving Plaintiff around. They put him in Robert Presley Detention Center in a cold, cement holding cell meant for 6 people, but 10 people were in there--when the one next to it was empty. They took his ID and wrist band. The water fountain was broken, so there was no water to drink,

44.    They held him for approximately 17 hours - (1:25pm on April 9, 2023 until 7:45am on April 10, 2023). While in there an inmate, 6'6"  & 284 lbs., was in a wheelchair but started walking around, and assaulted Plaintiff, while other inmates slept.

45.    They moved Plaintiff to Cell 16B-22 at Banning, with cellmate that is a known abuser who immediately grabbed his bible and ripped it up.

46.    April 11, 2023 at 2:00pm, the Deputy said we're moving you. Plaintiff said, "Why?" The Sheriff replied, "Does it matter?" Another deputy said that Plaintiff was having problems with the cellmate.  The cellmate said, "You're not leaving. You're not taking my cellmate."  Then, the cellmate grabbed Plaintiff off of his bed, punched him in the face, and pulled him to the floor.  He hit his head on the concrete.  Plaintiff slipped on food on the floor and hurt his back, head and elbow. Plaintiff had to work to get the inmate off of him.  Plaintiff told the Deputy, who witnessed the assault, that he wants to

press charges for the assault. The Deputy said, "We'll have to look at the video."  The
pain suffered from this individual's assault would continue for months.  Banning.

47.    Between April 9, 2023,  and early May 2023, Plaintiff was moved no less
than 7 times.   He was in holding for 19 hours on Easter Sunday. He was assaulted by
another inmate while in holding.

48.    Plaintiff was assaulted and threatened by another inmate who called him "N-
word Jew."  When plaintiff complained, sheriffs moved him to a cell with overflowing
fecal matter, then outside in cold, chained for hours. Plaintiff is informed and believes
and thereon alleges that Defendants continue to violate the law of Administrative
Separation; denying Plaintiff his legal rights by purposefully and consistently putting him
with known violent criminals.

49.    On or about June 5, 2023, at Banning, a roach was put in Plaintiff's food
from the kitchen. His name is on his tray, and he has had rocks, poop, glass, and razor
blade pieces in his food.

50.    Plaintiff had a staff infection because he sought to clean his cell, from the
end of June until July. He was also a trustee at this time and was tasked with pulling trash
and similar tasks. He asked for gloves to use and was told no.  He was in the hospital
because he took it upon himself to try to clean his cell as the officers would  not help him.
More, at around this time, he suffered from a spider bite. He has had several of these
while incarcerated due to the conditions at the jail.  He was in the hospital for five days in
Moreno Valley. While there, officers laughed as a priest prayed for him.

51.    On or about August 8, 2023 Plaintiff was attacked (sucker punched in the
face) by another inmate at the Banning Jail.

52.    As of 9/14/23, Plaintiff continued to undergo harassing and provoking
behavior at Banning Jail.  Whenever he left his dorm and returned, items from his
commissary package are stolen.   Deputies have cameras on 24/7, however, they do not
try to correct wrong behavior. On September 8, 2023, the alarm was going off for 20

minutes and the Deputies said they didn't hear it. Plaintiff was experiencing massive headaches, dizziness, acid reflux, depression, and still had pain in his back. On September 12, 2023, Plaintiff's Blood Pressure was 148. Blood work indicated that he has liver problems, but Plaintiff did not have liver, kidney or lung problems before arriving there.

53.     On September 28, 2023, Plaintiff was denied access to Medical Treatment by two Deputies between 8am and 4pm on three occasions at Banning Jail.  He was waiting for days for a sick call to see a Nurse. He requested a sick call on Monday, Tuesday, Wednesday, and Thursday because of his back, etc. On 9/29, a nurse came to Plaintiff around 1:45pm and asked him, "Why did you refuse medical?" He said, "I didn't." Later, at 3:45pm he asked the Deputies in the Pod, why didn't they call him when they were calling other people, and just walking past him, then reporting to the Nurse that he refused Medical. The Deputy lied to him and said that he did come for him. However, it is on camera, because Plaintiff pushed the button several times over those past few days, as well as on 09/28/2023.

54.     At approximately 8:45pm on September 30, 2023, Plaintiff told his mother that there were two inmates at Banning confessing and plotting future crimes to him based on their past experiences. They were asking Plaintiff to  say it was okay and pray for them to get away with it. Plaintiff told them both "No" that they were never going to get away with it and to leave him alone. They kept harassing him. Earlier, he reported the harassment to a Deputy. Then, after he refused to pray for them, one of them went to the deputies and said "I can't program with everyone here." Deputies rushed in,  cuffed Plaintiff, knocked his head against the wall a couple of times, and manhandled him. They took him to Programs Room. While this was happening, his commissary was stolen: washcloths, medication (Ibuprofen), and some food. He spoke to Mental Health (MH) about the harassment earlier. He was held in a booth (CT1) as Deputies threatened to put him in solitary. He had been asking for socks, which had been stolen previously.

Someone handed him some socks, and deputies said he lied about socks (they didn't bring them to him).They held him in MH booth until 1:30am October 1, 2023. He was not given grievances to report abuse as he requested.

55.    On or about October 7, 2023, while in holding at Banning Jail, the Deputies threatened to put Plaintiff outside or in solitary confinement.  Plaintitff's cell mate in 16B19, said he was told to harass and threaten Plaintiff until he drops his lawsuit. Another inmate located in 16B27 is harassing and threatening bodily harm to Plaintiff. When the deputies finally put him in a cell, (after 13+ hours in holding) the bed was soaked with urine, and there was urine and garbage everywhere. Plaintiff said he wasn't going in there. A deputy responded by saying:  "Do you want to see what we'll do to you if you don't." Then, he pushed Plaintiff in the cell.

56.    Every time Plaintiff follows the stated procedure by reporting someone talking about committing suicide or killing someone, he is punished.

57.    Plaintiff has also suffered abuse by Deputies who rush him in the cell and cavity search him. Whenever he is not pleased with their behavior and expresses it on the phone to his mother or seeks to file grievances, deputies resort to abuse and humiliation through unnecessary cavity searches. Plaintiff has been taunted and tortured, with physical and psychological abuse through what amounts to sexual humiliation and threats of sexual humiliation.

58.    On or about November 23, 2023, at Banning Jail, Plaintiff went to the nurse with chest pain,  a headache, back pain, trouble breathing, sore throat and a skin rash. He told her how he had been throwing up. Others have been throwing up because of the water from the sink in the dorm.).  It hurt to breathe while lying down, as it felt when he suffered his collapsed lung.  Although Plaintiff's pain is from the center of his chest to his right arm, the nurse said there's nothing wrong, and didn't give him anything.

59.    Due to the COUNTY Jail's patterns and practices of not conducting proper and timely welfare and safety checks, Plaintiff is often in dire need for intervention but

his requests go unnoticed by the CBDC custody staff, who were responsible for monitoring and ensuring the welfare of all inmates, including Plaintiff.

60.    Due to the COUNTY Jail's patterns and practices of not properly segregating the inmates pursuant to Penal Code § 4001 and § 4002, Plaintiff has been housed with convicted felons with known dangerous propensities.

61.    Due to the great delays in intervention for Plaintiff, and the failures on behalf of the CBDC custody staff in performing the required safety and welfare checks, as well as the failure to properly segregate the inmates pursuant to Penal Code § 4001 and § 4002, Plaintiff has suffered injuries that were otherwise avoidable.

62.    Plaintiffs timely and properly filed tort claims with the County of Riverside pursuant to California Government Code sections 910 et seq., and this action is timely filed within all applicable statutes of limitation.

63.    This complaint may be pled in the alternative pursuant to Federal Rule of Civil Procedure 8(d).

## FACTUAL ALLEGATIONS COMMON TO *MONELL* AND SUPERVISORIAL CAUSES OF ACTION

64.    Based upon the principles established in *Monell v. Dep't of Soc. Servs. Of City of New York*, 436 U.S. 658 (1978), Defendants are liable for all injuries sustained by Plaintiff as set forth herein. To establish municipal liability under *Monell*, a plaintiff must prove: (1) that [the plaintiff] possessed a constitutional right of which she was deprived; (2) that the municipality had a policy/custom/practice; (3) that this policy/custom/practice amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the policy/custom/practice is the moving force behind the constitutional violation. *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir, 2011). The policy/custom/practice "need only cause the constitutional violation; it need not be unconstitutional per se." *Chew v. Gates*, 27 F.3d 1432, 1444 (9th Cir. 1994). Recognized paths to *Monell* liability include: (1) an unconstitutional custom, practice or policy behind the violation of rights; (2) a

deliberately indifferent omission, such as a failure to train or failure to have a needed policy; and (3) a final policy-maker's involvement in or ratification of the conduct underlying the violation of rights. *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1249-1250 (9th Cir. 2010).

### A. The COUNTY Jails Experienced its Deadliest Year in 2022

65.    As it stands, the Riverside County Sheriff's Department is a model of deliberate indifference toward human rights and public safety. And as with a dead fish, the department rots from its head. Since Chad Bianco took office in 2018, the Riverside County Sheriff's Department has had multiple incidents of incompetence, dysfunction, and outright criminality. Within four days of each other in September 2023, two Riverside County deputies were arrested—one with over 100 pounds of fentanyl in his automobile, and the other discovered to be under the influence and in possession of drugs while conducting his duties in one of Riverside County's correctional facilities.

66.    In 2022, Defendant RIVERSIDE COUNTY SHERIFF'S DEPARTMENT'S COUNTY Jails have resulted in eighteen (18) in-custody deaths, as well as (on information and belief) many injuries related to the misconduct in question.  The Attorney General's investigation is meant to understand whether the Riverside County Sheriff's Office (RCSO) has engaged in a pattern or practice of unconstitutional policing amid deeply concerning allegations relating to conditions of confinement in its jail facilities, excessive force, and other misconduct."[1]

67.    The Defendants' deliberate indifference towards protecting pretrial detainees from hazards resulted in illegal drugs permeating the COUNTY Jails. According to Defendant KRACHMIER, from November 2021 through November 2022, the COUNTY

---

[1] See State of California Department of Justice Press Release: "Attorney General Bonta Launches Civil Rights Investigation into Riverside County Sheriff's Office," February 23, 2023, available at https://oag.ca.gov/news/press-releases/attorney-general-bonta-launches-civil-rights-investigation-riverside-county

Jails experienced 140 overdoses, with inmates overdosing at least twice a week within the COUNTY Jails.[2]

68.     The Defendants' deliberate indifference towards pretrial detainees suffering from mental health issues resulted in several completed and attempted suicides. For instance, on November 23, 2022, pretrial detainee Charles Wall attempted suicide by jumping off the top tier of his housing module at RPDC. The COUNTY Jails Are On Track to Claim Just As Many Lives in 2023.

69.     The Defendants' deliberate indifference towards protecting pretrial detainees from violence has resulted in numerous deaths and assaults at the COUNTY Jails. Upon information and belief, this indifference has resulted in the 2022-2023 deaths of several inmates, and the brutal sexual assault of a pretrial detainee in April of 2023 at the COUNTY Jails.

**B. California Department of Justice Launches Patterns and Practices Investigation into Record Breaking In-Custody Deaths at the COUNTY Jails**

70.     On February 23, 2023, the California Department of Justice (DOJ) announced its decision to launch a formal investigation into Defendant RIVERSIDE COUNTY SHERIFF'S DEPARTMENT's unconstitutional patterns and practices resulting in record-breaking in-custody deaths at the COUNTY Jails and the use of excessive force by sheriff's deputies, disproportionately affecting Latino and African American communities.[3] The raw data and the per capita data make clear that the COUNTY Jails are a death sentence for any pretrial detainee, some of whom have died

---

[2] See "Families Question Suspected Fentanyl Deaths of Loved Ones Behind Bars; Riverside Co. Sheriff Reacts" (Fox11 News, November 7, 2022), available at https://www.foxla.com/news/fentanyl-responsible-for-a-third-of-riverside-county-jail-deaths-in-2022-families-demand-answers
[3] See State of California Department of Justice Press Release: "Attorney General Bonta Launches Civil Rights Investigation into Riverside County Sheriff's Office," February 23, 2023, available at https://oag.ca.gov/news/press-releases/attorney-general-bonta-launches-civil-rights-investigation-riverside-county

just days after being booked.[4] For reference, San Diego County had 19 in-custody deaths in 2022, despite an average daily jail population of 500 more people than Riverside County.

### C. RCSD's History of Indifference Towards Inmates Incarcerated at the COUNTY Jails

71.    For well over a decade now, the COUNTY's own Grand Jury, as well as several independent auditors, have come to the same conclusion: dangerous deficits in health care services at the jails threaten the lives and health of the thousands of men and women they hold.

72.    The "2010-11 Grand Jury Report: Riverside County Detention Health Care Administration" found systemic failures in treatment, medication management, record-keeping, and administration of forced medications, among other areas.[5]

73.    The Grand Jury released an updated report in June 2012, noting that mental health staffing had in fact decreased since its prior year's report.[6]

74.    On March 8, 2023, the federal class action lawsuit *Quinton Gray, et al. v. County of Riverside*, case number 13-0444 VAP (OPx) (C.D. Cal.) was filed against Defendants COUNTY OF RIVERSIDE and RIVERSIDE COUNTY SHERIFF'S DEPARTMENT. The class action alleged that the COUNTY failed to provide minimally adequate medical and mental health care to the people incarcerated in its jails, in violation of the Eighth and Fourteenth Amendments to the United States Constitution. The class action also alleged discrimination against certain inmates with disabilities in

---

[4] *Id.*
[5] See 2010-2011 Grand Jury Report re: Detention Mental Health Services, available at https://rivco.org/sites/g/files/aldnop116/files/Past%20Reports%20%26%20Responses/2010-2011/11mentalhealth_detentionserv.pdf
[6] See 2011-2012 Grand Jury Report re: Detention Mental Health Services, available at https://rivco.org/sites/g/files/aldnop116/files/Past%20Reports%20%26%20Responses/2011-2012/12mentalhealthdetention.pdf

violation of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act.

75.    The *Gray* operative complaint (Dkt. 150) alleged the following unconstitutional patterns and practices permeating the COUNTY Jails:

76.    RCSD, by policy and practice, maintains and runs a health care system that lacks basic elements necessary to provide constitutional care;

77.    RCSD, by policy and practice, systematically fails to identify and diagnose serious conditions, to provide timely care, to administer appropriate medications, to employ adequate staff to meet inmates' basic needs, to maintain records that allow informed treatment decisions, to establish legally required confidentiality, and to identify and correct its own failings;

78.    RCSD, by policy and practice, maintains and runs substandard medication management and administration;

79.    RCSD, by policy and practice, is severely understaffed at the COUNTY Jails;

80.    RCSD, by policy and practice, provides substandard medical care to inmates;

81.    RCSD, by policy and practice, provides substandard mental health care to inmates;

82.    On September 2, 2014, the Court granted Plaintiffs' Motion for Class Certification.

83.    On February 20, 2015, the parties agreed to hire neutral experts to determine whether the health care provided at the COUNTY Jails posed a significant risk of serious harm to inmates confined in the COUNTY Jails and, if so, to make recommendations for improvements that will provide the minimum care guaranteed by the United States Constitution.

84.     On July 15, 2015, the neutrally-appointed experts issued reports, determining that the health care failed to meet the constitutional minimum. As such, the parties agreed to negotiate a Remedial Plan to address the identified deficiencies in the expert reports.

85.     Due to the COUNTY DEFENDANTS' ongoing failures to comply with the Consent Decree, Plaintiffs in the *Gray* Class Action have had to seek emergency relief from the Court to ensure that the Consent Decree is enforced.

**C. Sheriff Bianco's Indifference to the Constitutional Violations and Failures Permeating His COUNTY Jails.**

86.     A County Sheriff, like SHERIFF BIANCO "may be held liable as a supervisor under § 1983 if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011). This causal connection can exist either "by setting in motion a series of acts by others or by knowingly refusing to terminate a series of acts by others, which the supervisor knew or reasonably should have known would cause others to inflict a constitutional injury." *Id*. at 1207–08. Ninth Circuit has long held that a supervisor "need not be 'directly and personally involved in the same way as are the individual officers who are on the scene inflicting constitutional injury.'" *Id*. at 1205-06 (9th Cir. 2011), cert. den'd, 132 S. Ct. 2101 (2012) (quoting *Larez v. City of Los Angeles*, 946 F.2d 630, 645-46 (9th Cir. 1991)). "Rather, the supervisor's participation could include his 'own culpable action or inaction in the training, supervision, or control of his subordinates,' 'his acquiescence in the constitutional deprivations of which the complaint is made,' or 'conduct that showed a reckless or callous indifference to the rights of others.'" *Id.* "We have never required a plaintiff to allege that a supervisor was physically present when the injury occurred." *Id.*

87.    The endemic, ongoing and unabated risks of injury or death to inmates incarcerated in the COUNTY Jails are well established. SHERIFF BIANCO has long been aware of these risks and harms which have resulted in injury and death to inmates incarcerated in his COUNTY Jails. SHERIFF BIANCO's failure to take action to ameliorate these conditions constitutes deliberate indifference to the safety and health of inmates incarcerated in his COUNTY Jails.

## IV.    PUNITIVE/EXEMPLARY DAMAGES ALLEGATIONS
### (Against individual Defendants SHERIFF CHAD BIANCO, EDWARD DELGADO, JAMES KRACHMER, DAVID HOLM, and DOES 1-25)

88.    Each Defendants' conduct as alleged herein was done with reckless disregard for human life, oppression, and malice.

89.    Long before Plaintiff's injuries occurred, Defendants SHERIFF CHAD BIANCO, EDWARD DELGADO, JAMES KRACHMER, DAVID HOLM knew that there existed a great indifference to the safety and protection of the inmates who were in the government's custody within the COUNTY Jails.

90.    Defendants SHERIFF CHAD BIANCO, EDWARD DELGADO, JAMES KRACHMER, DAVID HOLM were repeatedly put on notice of the great dangers which existed within the COUNTY Jails through the long history of in-custody deaths and serious injuries; the record-breaking amount of fentanyl overdoses throughout all COUNTY Jails; the federal class action *Quinton Gray, et al. v. County of Riverside*, case number 13-0444 VAP (OPx) (C.D. Cal.) targeting Defendant RIVERSIDE COUNTY SHERIFF'S DEPARTMENT's custody and medical staff's deliberate indifference towards the safety and protection of inmates; the warnings from the neutrally-selected experts regarding failures amounting to constitutional violations; a Consent Decree directing Defendant RIVERSIDE COUNTY SHERIFF'S DEPARTMENT to implement a Remedial Plan to meet the minimum level of health care necessary to fulfill its obligations under the Eighth and Fourteenth Amendments; and through a Settlement

Agreement which the COUNTY voluntarily entered into requiring that Defendant RIVERSIDE COUNTY SHERIFF'S DEPARTMENT remedy all of the deficiencies in healthcare and disability accommodations alleged in the *Gray* Class Action complaint.

91.    Despite this long history of complete disregard to inmate safety and protection, Defendants SHERIFF CHAD BIANCO, EDWARD DELGADO, JAMES KRACHMER, and DAVID HOLM have deliberately failed to take even modest actions to prevent in-custody deaths and serious injuries at the COUNTY Jails which have for a very long time been infested with endemic, ongoing and unabated risks of injury or death to inmates.

92.    The Defendant officers, and each of them, acted with malice and oppression and with a conscious disregard for Plaintiffs' rights, making the individual defendants, including DOES 1-25, liable for punitive damages.

## FIRST CAUSE OF ACTION

### FAILURE TO PROTECT FROM HARM, VIOLATION OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION

### (By Plaintiff Against All Defendants)

93.    Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

94.    Defendants COUNTY, RCSD and DOES 1 through 10 were on notice that their deficient policies, procedures, and practices alleged herein created substantial risk of serious harm to an inmate in Plaintiff's position.

95.    Each Defendant could have taken action to prevent unnecessary harm to Plaintiff but refused or failed to do so.

96.    By policy, procedure, and practice, Defendants COUNTY, RCSD and DOES 1 through 10 deliberately disregarded the hazards and risks posed to persons incarcerated at the CBDC, as alleged above. Defendants failed to take any reasonable

steps to mitigate the obvious and well-known risks of harm that resulted in harm to Plaintiff.

97.    Defendants including SHERIFF BIANCO, EDWARD DELGADO, JAMES KRACHMER, DAVID HOLM and DOES 8 through 10 also knew that deputies routinely failed to conduct required welfare and safety checks at the COUNTY Jails, including CBDC, and failed to take sufficient actions to correct this problem and ensure that necessary checks were performed.

98.    Defendant SHERIFF BIANCO failed to take corrective action, discipline, or remove the command staff at the COUNTY Jails, including CBDC, who, upon information and belief, directed the deputies to falsify safety check logs and violate the COUNTY's safety check policies. Defendant SHERIFF BIANCO ratified their actions, and the practices used under his watch.

99.    Defendants COUNTY, RCSD and DOES 1 through 10 were on notice that their policies, procedures, and practices for monitoring inmates at the COUNTY Jails, including CBDC, were inadequate and gave rise to a substantial risk of serious harm.

100.    Defendants including SHERIFF BIANCO, EDWARD DELGADO, JAMES KRACHMER, DAVID HOLM and DOES 8 through 10 failed to properly train and supervise RCSD custody and medical staff regarding policies, procedures, and practices necessary for the protection of inmates from risks and hazards existing within the COUNTY Jails, including CBDC.

101.    Defendants including SHERIFF BIANCO, EDWARD DELGADO, JAMES KRACHMER, DAVID HOLM and DOES 8 through 10's failure to correct their policies, procedures, and practices despite notice of significant and dangerous problems, evidence a deliberate indifference to the risk of harm to inmates in their care, including Plaintiff.

102.    Defendants SHERIFF BIANCO, EDWARD DELGADO, JAMES KRACHMER, DAVID HOLM and DOES 8 through 10 ratified Defendants DOES' actions and inactions amounting to constitutional violations.

103.   Defendants DOES 1 through 10's failure to properly classify persons at its facility, failure to conduct the required safety checks of Plaintiff's housing unit, evidence a deliberate indifference to the risk of harm to inmates in their care, including Plaintiff.

104.   Defendants SHERIFF BIANCO, EDWARD DELGADO, JAMES KRACHMER, DAVID HOLM and DOES 8 through 10 ratified Defendants DOES' failure to conduct safety checks and/or falsification of logs, failure to properly classify inmates and pretrial detainees, and opening cell doors without adequate personnel in the area to prevent further harm.

105.   As a direct and proximate result of Defendants' conduct, the civil rights of Plaintiff, as protected by the Fourteenth Amendment of the United States Constitution were violated. Further, Plaintiff has and continues to experience physical pain, severe emotional distress, and mental anguish.

106.   Defendants have subjected Plaintiff to their wrongful conduct, depriving Plaintiff's rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of Plaintiff and others would be violated by their acts and/or omissions.

107.   As a direct and proximate result of Defendants' acts and/or omissions as set forth above, Plaintiff, through Plaintiff herein, sustained injuries and damages.

108.   The conduct of Defendants entitles Plaintiff to punitive damages and penalties allowable under 42 U.S.C. § 1983 and as provided by law. Plaintiff does not seek punitive damages against Defendants COUNTY.

109.   Plaintiff is also entitled to reasonable costs and attorneys' fees under 42 U.S.C. § 1988, and other applicable United States and California codes and laws.

## SECOND CAUSE OF ACTION

### Public Entity Liability for Failure to Perform Mandatory Duty

### (By Plaintiffs Against Defendants COUNTY OF RIVERSIDE and RIVERSIDE COUNTY SHERIFF'S DEPARTMENT)

110. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

111. California Penal Code § 4001 requires that "Each county jail must contain a sufficient number of rooms to allow all persons belonging to either one of the following classes to be confined separately and distinctly from persons belonging to either of the other classes:

    1. Persons Committed on criminal process and detained for trial;

    2. Persons already convicted of crime and held under sentence;

    3. Persons detained as witnesses or held under civil process, or under an order imposing punishment for a contempt."

112. California Penal Code § 4002(a) mandates that: "Persons committed on criminal process and detained for trial, persons convicted and under sentence, and persons committed upon civil process, shall not be kept or put in the same room, nor shall male and female prisoners, except spouses, sleep, dress or undress, bathe, or perform eliminatory functions in the same room. However, persons committed on criminal process and detained for trial may be kept or put in the same room with persons convicted and under sentence for the purpose of participating in supervised activities and for the purpose of housing, provided, that the housing occurs as a result of a classification procedure that is based upon objective criteria, including consideration of criminal sophistication, seriousness of crime charged, presence or absence of assaultive behavior, age, and other criteria that will provide for the safety of the prisoners and staff."

113. Defendants COUNTY and RCSD, through their employees and agents, and through their policy-making supervisors, SHERIFF BIANCO, EDWARD DELGADO,

JAMES KRACHMER, DAVID HOLM violated Penal Code § 4001 and § 4002 when Defendants housed Plaintiff with multiple convicted felons with known dangerous propensities.

114.   Defendants, and each of them, have either failed to classify individuals for housing purposes at CBDC pursuant to law, or failed to have a classification system that was based upon objective criteria, including consideration of criminal sophistication, presence or absence of assaultive behavior, age, and other criteria that would provide for the safety of the inmates and staff.

115.   As a result of Defendants failure to perform its mandatory duties, Plaintiff has been harmed constantly through, among other things, attacks for inmates, retaliatory treatment, and unnecessary cavity searches by Defendants.

116.   Defendants COUNTY and RCSD's failure to perform its mandatory duties was a substantial factor in causing Plaintiff's harm as alleged herein.

### THIRD CAUSE OF ACTION

**MUNICIPAL POLICIES, CUSTOMS, PRACTICES CAUSING CONSTITUTIONAL VIOLATIONS (*MONELL* – 42 U.S.C. § 1983)**

**(By Plaintiffs Against Defendants COUNTY OF RIVERSIDE and RIVERSIDE COUNTY SHERIFF'S DEPARTMENT)**

117.   Plaintiff realleges and incorporates  by reference all preceding paragraphs as though fully set forth herein.

118.   The unconstitutional actions and/or omissions of Defendants DOES 1 through 10, as well as other employees or officers employed by or acting on behalf of the Defendants COUNTY and RCSD, on information and belief, were pursuant to the following customs, policies, practices, and/or procedures of Defendants COUNTY and RCSD, stated in the alternative, which were directed, encouraged, allowed, and/or ratified by policymaking officers for Defendant COUNTY and RCSD:

119.   To deny pretrial detainees and other inmates access to safe and appropriate housing;

120.   To allow and encourage deputies doing regular cell checks on inmates, including in safety cells, to fail to document their actual observations of the inmate's condition and status, in violation of the County of Riverside's written policies and state law;

121.   To allow and encourage inadequate and unsafe housing for jail inmates and arrestees;

122.   To fail to train custody staff regarding administrative segregation of inmates;

123.   To fail to institute, require, and enforce proper and adequate training, supervision, policies, and procedures concerning handling housing of persons;

124.   Failing to take adequate security measures to protect detainees, arrestees and inmates from unnecessary harm, including but not limited to, the following:

125.   Separation of detainees and arrestees from potentially violent or dangerous inmates;

126.   Use of security cameras to monitor violence within jail cells;

127.   Training deputies to monitor detainees and inmates and immediately respond to acts of violence or threats of violence;

128.   Failing to properly classify, house, and monitor detainees, arrestees and inmates;

129.   Failing to properly classify, house and monitor violent detainees, arrestees and inmates;

130.   To allow and encourage deputies doing regular cell checks on inmates, including in safety cells, to fail to document their actual observations of the inmate's condition and status, in violation of the COUNTY OF RIVERSIDE and RCSD's written policies and state law;

COMPLAINT

131.    To deny pretrial detainees and other inmates access to timely, appropriate, competent, and necessary care for serious medical needs, requiring such inmates in crisis to remain untreated in jail instead of providing for their emergency medical needs;

132.    To cover up violations of constitutional rights by any or all of the following:

133.    By failing to properly investigate and/or evaluate incidents of violations of rights, including inmate assaults at the jail;

134.    By ignoring and/or failing to properly and adequately investigate and/or investigate and discipline unconstitutional or unlawful conduct by custodial personnel; and

135.    By allowing, tolerating, and/or encouraging custodial personnel to: fail to file complete and accurate reports; file false reports; make false statements; and/or obstruct or interfere with investigations of unconstitutional or unlawful conduct by withholding and/or concealing material information;

136.    To allow, tolerate, and/or encourage a "code of silence" among law enforcement officers, RCSD personnel, custodial personnel at the jail whereby an officer or member of the RCSD does not provide adverse information against a fellow officer, or member of the RCSD;

137.    To fail to have and enforce necessary, appropriate, and lawful policies, procedures, and training programs to prevent or correct the unconstitutional conduct, customs, and procedures described in subparagraphs (a) through (l) above, with deliberate indifference to the rights and safety of pretrial detainees, such as Plaintiff, and in the face of an obvious need for such policies, procedures, and training programs.

138.    The unconstitutional actions and/or omissions of Defendants DOES 1 through 10, as well as other officers employed by or acting on behalf of the COUNTY and RCSD, on information and belief, were pursuant to the following customs, policies, practices, and/or procedures of the COUNTY and the RCSD, stated in the alternative, which were directed, encouraged, allowed, and/or ratified by policymaking officers for

the COUNTY and RCSD, including SHERIFF BIANCO, EDWARD DELGADO, JAMES KRACHMER and DAVID HOLM:

139.   To fail to properly and adequately hire, train, supervise, and monitor custodial personnel at the jails;

140.   To fail to use appropriate and generally accepted law enforcement procedures for housing persons at the facility;

141.   To fail to institute, require, and enforce proper and adequate training, supervision, policies, and procedures concerning housing persons at the facility;

142.   To cover up violations of constitutional rights by any or all of the following:

143.   By failing to properly investigate and/or evaluate complaints or incidents regarding the housing of persons;

144.   By ignoring and/or failing to properly and adequately investigate and/or discipline unconstitutional or unlawful law enforcement activity; and

145.   By allowing, tolerating, and/or encouraging law enforcement officers to: fail to file complete and accurate reports; file false reports; make false statements; intimidate, bias and/or "coach" witnesses to give false information and/or to attempt to bolster officers' stories; and/or obstruct or interfere with investigations of unconstitutional or unlawful law enforcement conduct by withholding and/or concealing material information;

146.   To allow, tolerate, and/or encourage a "code of silence" among law enforcement officers whereby an officer does not provide adverse information against a fellow law enforcement officer;

147.   To allow, tolerate, and/or encourage a "code of silence" among custodial personnel at the COUNTY jails whereby custodial personnel does not provide adverse information against a fellow staffer;

148.   To fail to have and enforce necessary, appropriate, and lawful policies, procedures, and training programs to prevent or correct the unconstitutional conduct,

customs, and procedures described in subparagraphs (a) through (f) above, with deliberate indifference to the rights and safety of pretrial detainees, such as Plaintiff, and in the face of an obvious need for such policies, procedures, and training programs.

149.    Defendants COUNTY and RCSD, through their employees and agents, and through their policy-making supervisors, SHERIFF BIANCO, EDWARD DELGADO, JAMES KRACHMER, DAVID HOLM and DOES 8 through 10, failed to properly hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline Defendants DOES 1 through 10, and other COUNTY and RCSD personnel, with deliberate indifference to the constitutional rights of Plaintiff, and others in similar positions, as described above, and therefore, those rights thereby violated.

150.    The unconstitutional actions and/or omissions of Defendants DOES 1 through 10, and other RCSD custody and medical staff, as described above, were approved, tolerated, and/or ratified by policymaking officers for the COUNTY and RCSD, including Defendants SHERIFF BIANCO, EDWARD DELGADO, JAMES KRACHMER, DAVID HOLM and DOES 8 through 10. Plaintiff is informed and believes and thereon alleges that the details of this incident have been revealed to the authorized policymakers within the COUNTY and RCSD, and that such policymakers have direct knowledge of the fact that Plaintiff's injuries have been the result of deliberate indifference to his rights to be protected and safe while in the custody of the COUNTY/RCSD, and his rights to have safe housing. Notwithstanding this knowledge, the authorized policymakers within the COUNTY and RCSD have approved of the conduct and decisions of Defendants DOES 1 through 10 in this matter, and have made a deliberate choice to endorse such conduct and decisions, and the basis for them, that resulted in injuries to Plaintiff. By so doing, the authorized policymakers within the COUNTY and RCSD have shown affirmative agreement with the individual Defendants' actions and have ratified the unconstitutional acts of the individual Defendants. Furthermore, Plaintiffs are informed and believe, and thereupon allege, that Defendants

SHERIFF BIANCO, EDWARD DELGADO, JAMES KRACHMER, DAVID HOLM and DOES 8 through 10, and other policy-making officers for the COUNTY and RCSD were and are aware of a pattern of misconduct and injury caused by COUNTY Jails custody and medical staff similar to the conduct of Defendants described herein, but failed to discipline culpable custody and medical staff and failed to institute new procedures and policy within the COUNTY and RCSD.

151.    The aforementioned customs, policies, practices, and procedures; the failures to properly and adequately hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline; and the unconstitutional orders, approvals, ratification, and toleration of wrongful conduct of Defendants COUNTY and RCSD were a moving force and/or a proximate cause of the deprivations of Plaintiff's clearly established and well-settled constitutional rights in violation of 42 U.S.C. § 1983. Defendants subjected Plaintiff to their wrongful conduct, depriving Plaintiff of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of Plaintiff and others would be violated by their acts and/or omissions.

152.    The COUNTY Jails, including CBDC, were overcrowded at the time Plaintiff was brutally beaten, which contributed to the pressure to place Plaintiff situations where he would be assaulted by other inmates, and by officers.   Plaintiffs allege that conditions resulting from overcrowding at the COUNTY Jails has led to the negligent, improper, and unconstitutional housing of inmates in RCSD custody, including CBDC, and including Plaintiff.

153.    The COUNTY Jails, including CBDC, were understaffed at the times Plaintiff has been assaulted, which contributed to RCSD custody personnel not properly and timely conducting proper welfare checks, not properly supervising and monitoring inmates, and not properly monitoring surveillance cameras installed to keep watch of the overcrowded CBDC facility. Plaintiff alleges that conditions resulting from this understaffing at the COUNTY Jails caused or contributed to the injury of Plaintiff.

Understaffing in the COUNTY Jails has led to the negligent, improper, and unconstitutional supervision of inmates in RCSD custody, including CBDC, and including Plaintiff.

154.   The Defendants' actions and omissions and the classification and housing of Plaintiff was contrary to generally accepted custodial classification and housing practices, causing Plaintiff to suffer damages through multiple assaults by both inmates and officers alike.

155.   Defendants DOES 1 through 10, each individually knew or reasonably should have known that his subordinates were violating clearly established law and/or RCSD policy and/or were acting negligently pertaining to the classification and housing of inmates by, inter alia, being deliberately indifferent to the record of past conduct of inmates before celling them with other inmates, being deliberately indifferent to the mental health status of inmates before celling them with other inmates, being deliberately indifferent to threats or statements made by inmates before celling them with other inmates, being deliberately indifferent to inmates' status regarding gang activity, being deliberately indifferent to the race of inmates or racial conflicts between inmates before celling them with one another and knew, should have known, or had reason to know that their conduct would deprive Plaintiff of his constitutional rights to, inter alia, life liberty and each defendant failed to act to prevent his subordinate from engaging in such conduct.

156.   As a direct and proximate result of the unconstitutional actions, omissions, customs, policies, practices, and procedures of Defendants COUNTY and RCSD, as described above, Plaintiff suffered serious injuries, and Plaintiff is entitled to damages, penalties, costs, and attorneys' fees against Defendants COUNTY and RCSD.

# V.    FOURTH CAUSE OF ACTION

### SUPERVISORY LIABILITY CAUSING CONSTITUTIONAL VIOLATIONS (FAILURE TO PROPERLY TRAIN, SUPERVISE AND DISCIPLINE, 42 U.S.C. § 1983)

### (By Plaintiffs Against Defendants SHERIFF CHAD BIANCO, EDWARD DELGADO, JAMES KRACHMER, DAVID HOLM and DOES 7 through 10)

157.   Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

158.   At all material times, SHERIFF BIANCO, DELGADO, KRACHMER, HOLM and DOES 8 through 10 had the duty and responsibility to constitutionally hire, train, instruct, monitor, supervise, evaluate, investigate, staff, and discipline the other Defendants employed by their respective agencies in this matter, as well as all employees and agents of the COUNTY and RCSD.

159.   Defendants SHERIFF BIANCO, DELGADO, KRACHMER, HOLM and DOES 8 through 10 failed to properly hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline the respective employees of their agencies, including Defendants DOES 1 through 10, and other COUNTY and RCSD personnel, with deliberate indifference to Plaintiffs', Plaintiff's, and others' constitutional rights, which were thereby violated as described above.

160.   As supervisors, Defendants SHERIFF BIANCO, DELGADO, KRACHMER, HOLM and DOES 8 through 10 each permitted and failed to prevent the unconstitutional acts of other Defendants and individuals under their supervision and control, and failed to properly supervise such individuals, with deliberate indifference to the rights to safety and protections while incarcerated at CBDC and the rights to the serious medical needs of Plaintiff. Each of these supervising Defendants either directed his or her subordinates in conduct that violated Plaintiff's rights, or set in motion a series of acts and omissions by his or her subordinates that the supervisor knew or reasonably should have known would deprive Plaintiff of rights, or knew his or her subordinates

were engaging in acts likely to deprive Plaintiff of rights and failed to act to prevent his or her subordinate from engaging in such conduct, or disregarded the consequence of a known or obvious training deficiency that he or she must have known would cause subordinates to violate Plaintiff's rights, and in fact did cause the violation of Plaintiff's rights. (See, Ninth Circuit Model Civil Jury Instruction 9.4). Furthermore, each of these supervising Defendants is liable in their failures to intervene in their subordinates' apparent violations of Plaintiff's rights.

161.   Prior to Plaintiff's incarceration,  Defendants SHERIFF BIANCO, DELGADO, KRACHMER, HOLM and DOES 8 through 10, and each of them, were aware that Defendants DOES 1 through 5 had engaged in a custom and practice of being deliberately indifferent to the classification and housing of inmates by, inter alia, being deliberately indifferent to the record of past conduct of inmates before celling them with other inmates, being deliberately indifferent to the mental health status of inmates before celling them with other inmates, being deliberately indifferent to the racial conflicts between cellmates before celling them with other inmates, being deliberately indifferent to threats or statements made by inmates before celling them with other inmates, being deliberately indifferent to inmates' deteriorating mental and physical states rendering them vulnerable and as pray to violent inmates, being deliberately indifferent to inmate's status as a pretrial detainee on nonviolent charges when housing him with male inmates who are convicted with known violent and predatory proclivities rendering them vulnerable and as pray to violent inmates, and knew, should have known, or had reason to know that their conduct would deprive the Plaintiff of his constitutional rights to, inter alia, life and liberty, and each Defendant failed to act to prevent his subordinate from engaging in such conduct.

162.   Defendants SHERIFF BIANCO, DELGADO, KRACHMER, and HOLM are being sued in their individual and personal capacities. Defendant SHERIFF BIANCO knew or reasonably could have known, of his subordinates' ongoing constitutional

violations, deliberate indifference to the safety and protection of inmates in the COUNTY Jails and failure to investigate incidents involving inmate-on-inmate violence in the COUNTY Jails, including CBDC. Defendant SHERIFF BIANCO failed to act to prevent these acts and he acquiesced, condoned or ratified a custom, practice or policy of ongoing misconduct by his subordinates, including Defendants DOES 1 through 10. Defendant SHERIFF BIANCO is sued in his individual capacity for his own culpable action or inaction in the training, supervisor, or control of his subordinates. Defendant SHERIFF BIANCO is also sued for his acquiescence in the constitutional deprivations as alleged herein and/or conduct that showed a reckless or callous indifference to the rights of inmates to be protected and safe while in the custody of the COUNTY Jails by implementation of policies, rules or directives. Defendant SHERIFF BIANCO's actions and/or inactions set in motion a series of acts by others, which he knew or reasonably should have known, would cause others to inflict the constitutional violations alleged herein.

163.    Prior to the incidents creating the basis for this lawsuit,  Defendant SHERIFF BIANCO knew or reasonably should have known, that RCSD custodial staff, including correctional officers, deputies, lieutenants, sergeants, detectives, including Defendants DOES 1 through 10, in the course and scope of their employment under color of law, were deliberately indifferent to the safety and protection of inmates in RCSD custody, failure to investigate to the prevalence of inmate-on-inmate violence existing within the COUNTY Jails, including at CBDC and violation of constitutional rights, which wrongful conduct resulted in vulnerable inmates being violently attacked while in custody.

164.    Defendants SHERIFF BIANCO, DELGADO, KRACHMER, and HOLM and DOES 6 through 8, and each of them, acting with deliberate indifference to the rights and liberties of the public in general, and of the present Plaintiff, and of persons in Plaintiff's class, situation and comparable position in particular (white pre-trial detainee

arrested on nonviolent charges), knowingly maintained, enforced and applied customs and practices of:

a. Ratifying wrongful conduct by custodial and medical staff which result in serious injuries and death to inmates in RCSD custody, civil litigation judgments and settlements by failing to implement corrective action to prevent repetition of the wrongful conduct;

b. Failing to discipline, investigate and take corrective actions against custodial and medical staff for misconduct, including, but not limited to, showing grave deliberate indifference to the protection and safety of inmates;

c. Employing and retraining custodial and medical staff, including DOES 1 through 5, who said Defendants knew or reasonably should have known had dangerous propensities for abusing their authority and for mistreating inmates and being deliberately indifference to the rights of inmates; and

d. Inadequately supervising, training, controlling, assigning, and disciplining custodial and medical staff, including DOES 1 through 5, who said Defendants knew or in the exercise of reasonable care should have known had the aforementioned propensities and character traits.

165.    The unconstitutional customs, policies, practices, and/or procedures of Defendants COUNTY and RCSD, as stated herein, were directed, encouraged, allowed, and/or ratified by policymaking officers for Defendants COUNTY and RCSD, including Defendants SHERIFF BIANCO, DELGADO, KRACHMER, HOLM and DOES 8 through 10, respectively, with deliberate indifference to Plaintiff's and others' constitutional rights, which were thereby violated as described above.

166.    The unconstitutional actions and/or omissions of Defendants DOES 1 through 10, and other COUNTY and RCSD personnel, as described above, were approved, tolerated, and/or ratified by policymaking officers for the COUNTY and RCSD, including Defendants SHERIFF BIANCO, DELGADO, KRACHMER, HOLM

and DOES 8 through 10. Plaintiff is informed and believes and thereon alleges that the details of this incident have been revealed to Defendants SHERIFF BIANCO, DELGADO, KRACHMER, HOLM and DOES 8 through 10 and that such Defendant-policymakers have direct knowledge of the fact that the injury of Plaintiff was not justified or necessary, but represented deliberate indifference to his rights to be protected and safe while in the COUNTY's custody and his rights to his serious medical needs, as set forth above. Notwithstanding this knowledge, on information and belief, Defendants SHERIFF BIANCO, DELGADO, KRACHMER, HOLM and DOES 8 through 10 have approved and ratified of the conduct and decisions of Defendants DOES 1 through 10 in this matter, and have made a deliberate choice to endorse such conduct and decisions, and the basis for them, that resulted in the injury of Plaintiff By so doing, Defendants SHERIFF BIANCO, DELGADO, KRACHMER, HOLM and DOES 8 through 10 have shown affirmative agreement with the individual Defendants' actions and have ratified the unconstitutional acts of the individual Defendants. Furthermore, Plaintiff is informed and believes, and thereupon allege, that Defendants SHERIFF BIANCO, DELGADO, KRACHMER, HOLM and DOES 8 through 10 and other policymaking officers for the COUNTY and RCSD were and are aware of a pattern of misconduct and injury, and a code of silence, caused by COUNTY and RCSD custody and medical staff personnel similar to the conduct of Defendants described herein, but failed to discipline culpable law enforcement officers and employees and failed to institute new procedures and policy within the COUNTY and RCSD.

167.    The aforementioned customs, policies, practices, and procedures; the failures to properly and adequately hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline; and the unconstitutional orders, approvals, ratification, and toleration of wrongful conduct of Defendants SHERIFF BIANCO, DELGADO, KRACHMER, HOLM and DOES 8 through 10 were a moving force and/or a proximate cause of the

deprivations of Plaintiff's clearly established and well-settled constitutional rights in violation of 42 U.S.C. § 1983, as more fully set forth above.

168.    Defendants subjected Plaintiff to their wrongful conduct, depriving Plaintiff of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of Plaintiff and others would be violated by their acts and/or omissions.

169.    As a direct and proximate result of the unconstitutional actions, omissions, customs, policies, practices, and procedures of Defendants SHERIFF BIANCO, DELGADO, KRACHMER, HOLM and DOES 8 through 10 as described above, Plaintiff sustained serious and permanent injuries and is entitled to damages, penalties, costs, and attorneys' fees.

## FIFTH CAUSE OF ACTION

### NEGLIGENCE

### (By Plaintiff Against All Defendants)

170.    Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

171.    At all times relevant herein, Defendants, and each of them, owed a duty to Plaintiff to act with the ordinary care of reasonable persons. "Every person is bound, without contract, to abstain from injuring the person or property of another, or infringing upon any of his or her rights." CA Civ. Code § 1708.

172.    There is a special relationship between a jailer and inmate. Imposing on the former a duty of care to the latter. Inmates, like Plaintiff, are vulnerable. And dependent. The relationship between then is protective by nature, such that the jailer has control over the inmate, who is deprived of the normal opportunity to protect himself from the harm inflicted by others.

173.    At all times, Defendants, and each of them, owed Plaintiff the duty to act with due care in the execution and enforcement of any right, law, or legal obligation.

174.   At all times, these Defendants owed Plaintiff the duty to act with reasonable care.

175.   These general duties of reasonable care and due care owed to Plaintiff by these Defendants include but are not limited to the following specific obligations:

176.   To refrain from unreasonably creating danger or increasing Plaintiff's risk of harm;

177.   To provide safe and appropriate RCSD custody at CBDC for Plaintiff, including reasonable classification, monitoring, and housing, and ensuring proper cell checks, supervision, and monitoring;

178.   To obey federal law, Supreme Court and Ninth Circuit precedent, and Court Orders for the care and safety of inmates, such as Plaintiff;

179.   To use generally accepted law enforcement, prison, custodial, institutional, and other inmate-safety-ensuring procedures and tactics that are reasonable and appropriate for Plaintiff's status as a person in pretrial custody status who is suspected of a nonviolent offense;

180.   To summon, or transport Plaintiff to, necessary and appropriate emergency medical care without subjecting him to additional violence;

181.   To conduct state mandated safety and welfare checks of inmates in the custody of the COUNTY Jails;

182.   To refrain from abusing their authority granted them by law;

183.   To refrain from violating Claimant's and Plaintiff's rights as guaranteed by the United States and California Constitutions, as set forth above, and as otherwise protected by law;

184.   To use separate housing when necessary to prevent harm to a person or as required by law;

185.   To intervene or halt an attack on a person when it becomes reasonably apparent that an assault has occurred;

186.    To examine, treat, monitor, prescribe for and care for Plaintiff and to provide him with timely medical attention;

187.    To refrain from unreasonable creating danger or increasing Plaintiff's risk of harm; and

188.    To conduct state mandated safety and welfare checks of inmates in the custody of the COUNTY Jails.

189.    Defendants, DOES 1 through 10, through their acts, omissions, negligence, carelessness, recklessness, unskillfulness, breached each and every one of the aforementioned duties owed to Plaintiff, which foreseeably resulted in Plaintiff's severe injuries.

190.    Defendants, through their acts and omissions, breached the aforementioned duties owed to Plaintiff, and such breach proximately led to the injuries Plaintiff has suffered and continued to suffer.

191.    Defendants DOES 1 through 10, all of which were custodial and mental health staff at the COUNTY Jails, acted with deliberate indifference and/or negligence by failing to properly supervise inmates that assaulted Plaintiff, failing to prevent said assaults to Plaintiff and failing to conduct proper and timely cell checks.

192.    Defendants SHERIFF BIANCO, DELGADO, KRACHMER, HOLM and DOES 8 through 10 had a duty to hire, supervise, train, and retain employees and/or agents so that employees and/or agents refrained from the conduct and/or omissions alleged herein.

193.    Defendants SHERIFF BIANCO, DELGADO, KRACHMER, HOLM and DOES 8 through 10 breached this duty, causing the conduct alleged herein. Such breach constituted negligent hiring, supervision, training, and retention under the laws of the State of California.

194.    As a direct and proximate result of the failure of Defendants SHERIFF BIANCO, DELGADO, KRACHMER, HOLM and DOES 8 through 10 to carry out their

duty to hire, supervise, train, and retain employees and/or agents so that employees and/or agents refrained from the conduct and/or omissions alleged herein, Plaintiff suffered injuries and damages as alleged herein.

195.   Defendants DOES 1 through 10, through their acts and omissions, breached each and every one of the aforementioned duties owed to Plaintiff.

196.   Defendants COUNTY and RCSD are vicariously liable for the violations of state law and conduct of their officers, deputies, employees, and agents, including individual named defendants, under California Government Code § 815.2.

197.   Defendants, DOES 1 through 10, and each of them, knew or had reason to know that Plaintiff has been in need of immediate medical care on several occasions, where the care provided was late in coming, if it came at all.  Plaintiff has suffered severe injuries as a result.

198.   As a direct and proximate result of these Defendants' negligence, Plaintiff sustained injuries and damages, and against each and every Defendant named in this cause of action in their individual capacities are entitled to relief, including punitive damages against such individual Defendants.

## VI.    SIXTH CAUSE OF ACTION

### VIOLATION OF CALIFORNIA CIVIL CODE § 52.1 (TOM BANE ACT)

### (By Plaintiff Against All Defendants)

199.   Plaintiff realleges and incorporates  by reference all preceding paragraphs as though fully set forth herein.

200.   By their acts, omissions, customs, and policies, Defendants, each acting in concert/conspiracy, as described above, while Plaintiff was in custody, and by threat, intimidation, and/or coercion, interfered with, attempted to interfere with, and violated Plaintiff's rights under California Civil Code § 52.1 and under the United States Constitution and California Constitution as follows:

201.    The right to be free from objectively unreasonable treatment and deliberate indifference to Plaintiff's serious medical needs while in custody as a pretrial detainee as secured by the Fourth and/or Fourteenth Amendments to the United States Constitution and by California Constitution, Article 1, §§ 7 and 13;

202.    The right to enjoy and defend life and liberty; acquire, possess, and protect property; and pursue and obtain safety, happiness, and privacy, as secured by the California Constitution, Article 1, § 1; and

203.    The right to be housed and confined separately as required by California Penal Code §4001 and §4002.

204.    The right to emergency medical care as required by California Government Code §845.6.

205.    By threats, intimidation or coercion, Defendants caused Plaintiff to reasonably believe that if he exercised his rights, Defendant would commit violence against him, and as police officers, they had the ability to carry out those threats.

206.    Defendants' violations of Plaintiff's due process rights with deliberate indifference, in and of themselves constitute violations of the Bane Act.[7] Alternatively, separate from, and above and beyond, Defendants' attempted interference, interference with, and violation of Plaintiff's rights as described above, Defendants violated Plaintiff's rights by the following conduct constituting threat, intimidation, or coercion:

207.    With deliberate indifference to Plaintiff's rights to be housed or confined in a separate area from a convicted felons and/or individuals with known violent tendencies Plaintiff was waiting to on trial;

---

[7] See *Atayde v. Napa State Hosp.*, No. 1:16-cv-00398-DAD-SAB, 2016 U.S. Dist. LEXIS 126639, at *23 (E.D. Cal. Sept. 16, 2016) (citing *M.H. v. Cty. of Alameda*, 90 F. Supp. 3d 889, 899 (N.D. Cal. 2013); see also, *Cornell v. City and County of San Francisco*, Nos. A141016, A142147, 2017 Cal. App. LEXIS 1011 at *58, f.n. 32 (Cal. Ct. App. Nov. 16, 2017) (approving *M.H., supra.*); *Reese v. County of Sacramento*, 888 F.3d 1030, 1043-44 (9th Cir. 2018) (following *Cornell*); *Rodriguez v. County of L.A.*, 891 F.3d 776, 799, 802 (9th Cir. 2018) (following *Cornell*).

208.    Intentionally and/or with deliberate indifference, failing to provide appropriate housing, thereby subjecting Plaintiff to needless and severe suffering, and exposing Plaintiff to violence, when it was also obvious that in doing so, Plaintiff would be victimized/assaulted, and Plaintiffs' rights would also be violated;

209.    Failing to protect Plaintiff from physical harm or from being set up or attacked, despite the fact that Plaintiff had complaints about the inmates he was housed with;

210.    With deliberate indifference to Plaintiff's serious medical needs, suffering, and risk of harm, depriving Plaintiff of necessary care for his medical needs;

211.    With deliberate indifference to violent and predatory inmates that posed a risk to pretrial detainees, such as Plaintiff;

212.    With deliberate indifference to hazards that posed a risk to pretrial detainees, such as Plaintiff;

213.    Subjecting Plaintiff to ongoing violations of his rights causing immense and needless suffering, intimidation, coercion, and threats to his life and well-being;

214.    Instituting and maintaining the unconstitutional customs, policies, and practices described herein, when it was obvious that in doing so, individuals such as Plaintiff would be subjected to violence, threat, intimidation, coercion, and ongoing violations of rights as Plaintiff was here.

215.    The threat, intimidation, and coercion described herein were not necessary or inherent to Defendants' violation of Plaintiff's rights, or to any legitimate and lawful jail or law enforcement activity.

216.    Further, all of Defendants' violations of duties and rights, and coercive conduct, described herein were volitional acts; none was accidental or merely negligent.

217.    Further, each Defendant violated Plaintiff's rights reckless disregard and with the specific intent and purpose to deprive him of his enjoyment of those rights and of the interests protected by those rights.

218.   Defendant COUNTY is vicariously liable for the violations of state law and conduct of their officers, deputies, employees, and agents, including individual named defendants, under California Government Code § 815.2.

219.   As a direct and proximate result of Defendants' violation of California Civil Code § 52.1 and of Plaintiff's rights under the United States and California Constitutions, Plaintiff sustained and continues to sustain injuries and damages, and against each and every Defendant is entitled to relief, including punitive damages against all individual Defendants, and all damages allowed by California Civil Code §§ 52 and 52.1 and California law, not limited to costs attorneys' fees, and civil penalties.

## SEVENTH CAUSE OF ACTION

### DECLARATORY RELIEF (28 U.S.C. § 2201)

### (By Plaintiff Against All Defendants)

220.   Plaintiff realleges and incorporates  by reference all preceding paragraphs as though fully set forth herein.

221.   There is an actual controversy between Plaintiff and Defendants concerning their respective rights and duties in that Plaintiff contends that the acts of Defendants, as described herein, are in violation of federal law, and Defendants contend in all aspects to the contrary.

222.   Plaintiff is entitled to a legal declaration of their rights and Defendants' obligations under the applicable laws as alleged in this Complaint.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against the Defendants, and each of them, as follows:

A.   Violation of Plaintiff's constitutional rights, pursuant to state and federal civil rights law;

B.   Plaintiff's conscious pain, suffering, and disfigurement, pursuant to federal civil rights law;

C. General Damages, including wrongful death and survival damages, in excess of the mandatory amount for jurisdiction in the Unlimited Superior Court;

D. Non-Economic Damages, according to proof plus all further and proper relief;

E. Punitive damages as to individual peace officer defendants;

F. Attorney's fees pursuant to State Law (Cal. Code Civ. Proc. § 1021.5 & private attorney general doctrine);

G. Penalties under the Tom Bane Act;

H. Interest; and

I. All other damages, penalties, costs, interest, and attorneys' fees as allowed by 42 U.S.C. §§ 1983 and 1988; California Code of Civil Procedure § 1021.5; California Civil Code §§ 52 et seq., 52.1; and as otherwise may be allowed by California and/or federal law.

Dated: February 13, 2024                    MCCUNE LAW GROUP, APC


By:_____
            Joseph L. Richardson
            Attorneys for Plaintiff

## JURY TRIAL DEMAND

Plaintiff hereby demands a jury trial on all issues so triable.

Dated:  February 13, 2024                    MCCUNE LAW GROUP, APC


By:_____

Joseph L. Richardson
Attorneys for Plaintiff